HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT ANDRE FRAZIER,<br><br>　　　　Defendant. | CASE NO. CR16-33RAJ<br><br>ORDER<br><br>[REDACTED] |

## I. INTRODUCTION

THIS MATTER comes before the Court on Defendant Robert Andre Frazier's Motion to Dismiss for Violation of *Brady v. Maryland*. Dkt. # 87. For the reasons set forth below, the Court will **GRANT** the Motion. Rather than dismiss the counts, however, the Court will pursue the less drastic remedy of excluding any and all evidence derived from the confidential informant. Nevertheless, given the Government's proffer – namely that it has no evidence beyond that derived from the confidential informant – the Court will dismiss the indictment.

## II. BACKGROUND

Mr. Frazier is charged with a single count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. # 11. Specifically, Mr. Frazier is alleged to have knowingly possessed a firearm on or about November 17, 2015 when he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. *See id.*

ORDER – 1

The genesis of the Government's investigation into Mr. Frazier began in November 2015. *See* Aug. 11, 2016 Hrg. Tr., Rongen Test. at 6:21-7:4, 36:19-24 (indicating that CCS Rongen would not have begun an investigation into Mr. Frazier but for receiving information from confidential informant). Kris Rongen, a community corrections specialist ("CCS") with the Washington Department of Corrections ("DOC") (*id.* at 4:5-9), learned that an individual wanted to provide information about Mr. Frazier (*id.* at 7:14-20). That individual was [REDACTED]. *Id.* at 7:25-8:2.

CCS Rongen met with [REDACTED] on November 6, 2015 at the DOC criminal justice center in downtown Seattle. *Id.* at 8:13-21. [REDACTED] reported to that location because [REDACTED], like Mr. Frazier, was on community custody. *Id.* at 8:22-24. CCS Rongen was joined at this meeting by community corrections officer ("CCO") Leslie O'Connor. *Id.* at 9:12-14. Although CCS Rongen had access to [REDACTED]'s chronos,[1] he did not review [REDACTED]'s chronos prior to meeting with [REDACTED]. *See id.* at 10:9-16. However, at that time, CCS Rongen learned that [REDACTED] had a criminal history and that [REDACTED] was at the DOC criminal justice center that day to take a polygraph. *See id.* at 13:9-14:4.

At the meeting, [REDACTED] told CCS Rongen that [REDACTED] had information about a homicide that had taken place a few days prior and that another individual – Mr. Frazier – was in possession of a firearm and was seeking retribution for the victim's death. *See id.* at 11:18-25. CCS Rongen corroborated the information through several avenues (*see id.* at 12:4-22) and brought the case forth at an ATF task force meeting a few days later where he received supervisory approval to continue investigating (*see id.* at 16:10-17:7). Soon after, on November 15, [REDACTED] called CCS Rongen to inform him that Mr. Frazier was staying at the Star Motel in the South

---

[1] A "chronos" is a chronological note taking system in the DOC's computer system. A note is ordinarily placed in a probationer's chronos whenever the DOC makes contact or meets with the probationer. Aug. 11, 2016 Hrg. Tr., Rongen Test. at 10:4-8. DOC officers have easy access probationers' chronoses. *See id.* at 10:9-11, 37:4-6; O'Connor Test. at 70:20-24.

ORDER – 2

1  end of Seattle. *See id.* at 17:8-17, 18:4-9.  CCS Rongen set up surveillance at the motel
2  the next day, ultimately observing Mr. Frazier loading a black SUV at the motel. *See id.*
3  at 17:20-18:3, 18:16-19:3.  CCS Rongen also spoke with motel management, who
4  confirmed that Mr. Frazier was staying there. *See id.* at 23:11-23.  According to Mr.
5  Frazier's probation officer, Mr. Frazier's residence at the Star Motel would violate the
6  terms of his probation. *See id.* at 21:7-22:2.  As a result, CCS Rongen and several other
7  officers arrested Mr. Frazier on November 17.[2]  *See id.* at 26:13-27:14, 32:21-23.

8      [REDACTED] had a checkered history.  [REDACTED] supervising CCO, Patricia
9  Turner, had reservations about [REDACTED]. *See* Aug. 11, 2016 Hrg. Tr., Turner Test.
10 at 77:21-23, 79:2-10.  CCO Turner suspected that [REDACTED] was violating the
11 conditions of [REDACTED] release – and that [REDACTED] was lying to her when
12 [REDACTED] met with her. *See id.* at 79:4-22.  These suspicions prompted CCO Turner
13 to investigate [REDACTED], but she was unable to establish enough facts. *See id.* at
14 79:23-80:9.

15     As part of this investigation, CCO Turner referred [REDACTED] for a polygraph
16 examination. *See id.* at 80:10-12.  [REDACTED] failed it. *Id.* at 86:9-12.  CCO Turner
17 likely was informed the day [REDACTED] took the polygraph. *See id.* at 82:14-17.  And
18 CCO O'Connor learned from CCO Turner that [REDACTED] failed the polygraph the
19 day she and CCS Rongen met with [REDACTED]. *See id.* O'Connor Test. at 57:23-
20 58:12.  Neither of them told CCS Rongen despite having other contact with CCS
21 Rongen. *See id.* O'Connor Test. at 57:23-58:15, Turner Test. at 86:13-87:2.  The fact
22 that [REDACTED] failed the polygraph was entered into [REDACTED] chronos just a
23 few days later. *See id.* Turner Test. at 83:4-9.

24     Beyond [REDACTED] failed polygraph, [REDACTED] also had significant
25 problems complying with the conditions of [REDACTED] community custody. *See id.*

---

[2] The details and circumstances of the actual arrest are irrelevant for purposes of the instant Motion.

ORDER – 3

1  Turner Test. at 89:21-90:23.  In fact, [REDACTED] chronos – visible to all DOC officers
2  – reflected these issues and numerous others.  *See id.* at 90:25-93:5, 93:23-98:25.  Other
3  chronos entries indicated that [REDACTED] admitted to violating the conditions of
4  [REDACTED] community custody, admitted lying to [REDACTED] supervising CCO,
5  and documented reports of [REDACTED]'s drug dealing and pimping activities.  *See id.*
6  Neither CCO Turner nor CCO O'Connor provided this information to CCS Rongen prior
7  to the November 6, 2015 meeting with [REDACTED].  *See id.* at 99:1-5.  In fact, CCO
8  Turner expressly relied on CCO O'Connor to convey this information to CCS Rongen.
9  *See id.* at 100:21-23.

10  [REDACTED] continued to violate the conditions of [REDACTED] community
11  custody after November 6.  For example, when CCO Turner confronted [REDACTED]
12  about [REDACTED] failed polygraph, [REDACTED] not only continued to lie, but
13  admitted to pimping activities.  *See id.* at 102:14-103:25.  Despite knowing that
14  [REDACTED] was being used as a witness before a grand jury in Mr. Frazier's case,
15  CCO Turner still did not present her concerns about [REDACTED]'s credibility to the
16  prosecutors.  *Id.* at 104:1-9.

17  Whatever the case, Mr. Frazier was arraigned on February 16, 2016.  *See* Dkt. #
18  17.  And just a few days later, [REDACTED] died.  *See* Aug. 11, 2016 Hrg. Tr., Turner
19  Test. at 105:3-10.  None of this information about [REDACTED] was disclosed to Mr.
20  Frazier until July 22, 2016 (*see* Dkt. # 87-1, Ex. A at 2), mere days before the date of trial
21  (*see* Dkt. # 25) and the hearing date for Mr. Frazier's motion to suppress (*see* July 6,
22  2016 Docket Entry).  This is in spite of the fact that Mr. Frazier's public defender in the
23  state court proceedings requested discovery in November 2015 (*see* Dkt. # 103 at 3) and
24  that Mr. Frazier's counsel requested discovery pursuant to Local Rule 16[3] during Mr.
25  Frazier's arraignment hearing in the instant case (*see* Dkt. # 17).

---

[3] This Local Rule covers, of course, *Brady* material.  *See* Local Rules. W.D. Wash. CrR 16(a)(1)(K).

ORDER – 4

### III.  ANALYSIS

The requirements for establishing a *Brady* violation are well known.  A defendant generally must show three elements: favorability, suppression, and materiality.  In other words, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (quoting *Gentry v. Sinclair*, 693 F.3d 867, 887 (9th Cir. 2012)).  Suppression may be either intentional or inadvertent, and even "[a]n 'innocent' failure to disclose favorable evidence constitutes suppression even where there is no allegation that the prosecutor acted 'willfully, maliciously, or in anything but good faith'—'sins of omission are equally within *Brady*'s scope.'" *Id.* (quoting *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009)).  Finally, "[e]vidence is prejudicial or material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"[4] *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The Court finds that all three elements are met.

The suppressed evidence regarding [REDACTED]'s credibility is clearly favorable.  "*Brady* encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the accused." *Price*, 566 F.3d at 907 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004)).  The sole basis for CCS Rongen's decision to investigate Mr. Frazier rested on information he received from [REDACTED].  As a result, whether [REDACTED] testified or not, [REDACTED] credibility was at issue.

---

[4] Numerous courts have commented that the pretrial standard is even more exacting, requiring prosecutors to disclose any favorable information without attempting to predict whether its disclosure will affect the outcome of trial. *See Olsen*, 704 F.3d at 1183 n.3 (collecting cases); *see also Price*, 566 F.3d at 913 n.14 (citing *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005); *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999)).

ORDER – 5

Underscoring [REDACTED]'s centrality to this case, the Government relied upon [REDACTED]'s testimony to support its indictment.

Moreover, the evidence was plainly suppressed. It was not produced until the eve of trial and well after [REDACTED]'s death. Untimely production of a witness' testimony may qualify as suppression for *Brady* purposes, particularly where disclosure occurs at a time where disclosure is no longer helpful to the accused. *See United States v. Aguilar*, 831 F. Supp. 2d 1180, 1203-06 (C.D. Cal. 2011); *see also United States v. Gamez-Orduno*, 235 F.3d 45, 461 (9th Cir. 2000) (quoting *United States v. Span*, 970 F.2d 573, 583 (9th Cir. 1992)) ("Such a due process violation may be cured, however, by belated disclosure of evidence, so long as the disclosure occurs at a time when disclosure would be of value to the accused.") (internal quotation marks omitted); *cf. United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976) (citing *United States v. Hiber*, 463 F.2d 455, 459 (9th Cir. 1972) (indicating that the pertinent issue "is whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial"). And the evidence here was certainly unhelpful to Mr. Frazier by the time it was disclosed. [REDACTED] had long since passed away by the time the Government even disclosed [REDACTED] identity to Mr. Frazier, leaving Mr. Frazier with no real opportunity to investigate the basis for [REDACTED]'s knowledge, [REDACTED]'s motivations for assisting the Government, or for cross-examining and impeaching [REDACTED] testimony.

And finally, Mr. Frazier was prejudiced by the Government's late disclosure. It is abundantly clear that Mr. Frazier was never provided an opportunity to investigate [REDACTED] (and [REDACTED] checkered past). And the fact that this impeachment evidence was not provided until after [REDACTED]'s death only compounds the prejudice Mr. Frazier faces. *See United States v. Fitzgerald*, 615 F. Supp. 2d 1156, 1161-62 (S.D. Cal. 2009) (finding that defendant suffered substantial prejudice from *Brady*

ORDER – 6

1 violation where government suppressed evidence impeaching the credibility of its key

2 witness until after witness had testified and then died).

3       Having found that a *Brady* violation has occurred, the question turns to the

4 appropriate remedy. Mr. Frazier requests that the Court dismiss the indictment, but a

5 district court generally may only do so if the Government's conduct is outrageous so as to

6 constitute a due process violation or in cases of flagrant prosecutorial misconduct. *See*

7 *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). Moreover, in order for a

8 district court to dismiss an indictment under its supervisory powers, the defendant must

9 have suffered substantial prejudice and there may be no lesser remedial action available.

10 *See id.* at 1087 (citing *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988); *United*

11 *States v. Barrero-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991)).

12       "[T]he Supreme Court as well as the Ninth Circuit has repeatedly pointed out that

13 dismissal of an indictment, particularly with prejudice, is a drastic measure." *United*

14 *States v. Isgro*, 974 F.2d 1091, 1098 (9th Cir. 1992). Instead, "when faced with

15 prosecutorial misconduct, a court should 'tailor[ ] relief appropriate in the

16 circumstances.'" *Id.* (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)).

17       The circumstances here do not necessarily support dismissal. The Government's

18 conduct here was unabashedly negligent. It withheld [REDACTED]'s identity (and the

19 abundant concerns about [REDACTED] credibility) despite initiating its investigation of

20 Mr. Frazier based solely on [REDACTED] information and, just as critically, using

21 [REDACTED] as a witness to support the indictment. In fact, the Government withheld

22 impeaching information beyond mere questions about [REDACTED]'s criminal history –

23 it did not reveal benefits that [REDACTED] received for [REDACTED] cooperation.

24 Specifically, [REDACTED] received $200 and CCS Rongen may have left a message for

25 [REDACTED]'s CCO informing her that [REDACTED] would be late for

26 [REDACTED] curfew. *See* Aug. 11, 2016 Hrg. Tr., Rongen Test. at 24:24-25:21.

27 Indeed, the Government continued to withhold evidence impeaching [REDACTED]'s

28 ORDER – 7

credibility after [REDACTED] death.  This was in spite of the fact that every DOC officer involved in this case has had access to (and some knowledge of) [REDACTED]'s many veracity problems.  This information was of course imputed to the prosecutor.  *See Aguilar v. Woodford*, 725 F.3d 970, 982 (9th Cir. 2013) (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).  Ultimately, however, even negligent behavior will not necessarily support dismissal.  *See United States v. Dominguez*, 641 F. App'x 738, 740 (9th Cir. 2016) (affirming district court's imposition of sanctions rather than dismissal of indictment where the Government conceded "that it was 'sloppy, inexcusably tardy, and almost grossly negligent' and [did] not dispute the district court's findings that it committed numerous *Brady, Giglio*, *Jencks* Act, and Rule 16 violations.").[5]

In this Court's view, the proper remedy here is exclusion and suppression of all evidence derived from [REDACTED].  Specifically, the Court excludes any and all evidence connected to [REDACTED]'s activities as it relates to the investigation of Mr. Frazier.  If [REDACTED] was still alive, the prejudice could readily be cured – particularly as trial has not yet taken place.  *See Kohring*, 637 F.3d at 913 (citing *Chapman*, 524 F.3d at 1086) (indicating that the appropriate remedy for a *Brady* violation is typically a new trial).  Unfortunately, because of [REDACTED]'s death, that option is not available – and there really is no lesser remedy available.  *See Fitzgerald*, 615 F. Supp. 2d at 1162.

---

[5] Generally speaking, the appropriate remedy for a *Brady/Giglio* violation is a new trial.  *See Kohring*, 637 F.3d at 913 (quoting *Chapman*, 524 F.3d at 1086).  And, the Ninth Circuit has found that even egregious government misconduct may not necessarily warrant dismissal of an indictment.  *See United States v. Struckman*, 611 F.3d 560, 577-78 (9th Cir. 2010) (affirming district court's remedy of suppression of evidence, not dismissal of indictment where the Government lied about the identity of a confidential informant, failed to disclose an IRS audit of a Government witness by lying that it did not exist, and Government's agent concealed deal between the Government and the witness); *see also Kohring*, 637 F.3d at 912-13 (remanding for new trial where Government suppressed evidence that key witness was investigated for sexual misconduct with minors, that cast doubt on his memory, and that suggested he made payments to legislator-defendant out of friendship and pity rather than corrupt *quid-pro-quo* relationship, as well as other impeaching evidence).

ORDER – 8

In addition, the Court finds that this remedy is appropriate to address the Government's conduct in this case. After hearing testimony from CCS Rongen, CCO O'Connor, and CCO Turner, the Court is convinced that the Government's agents have taken a cavalier attitude toward their *Brady* obligations. This information was not disclosed to Mr. Frazier – either during the state court proceedings or in the instant case – even though each of these individuals had knowledge and ready access to [REDACTED]'s problematic conduct. In fact, if Mr. Frazier had received this information during the state court proceedings – or even immediately after being arraigned in the instant case – he may have been able to properly investigate [REDACTED]'s background prior to [REDACTED] death. Mr. Frazier is no longer able to do so. Instead, the Government continued to minimize the egregiousness and prejudice to Mr. Frazier caused by the nondisclosure even when confronted with the behavior of its agents. *See* Dkt. # 100. In this Court's view, that unwillingness to own up to this misconduct supports this remedy. *See Chapman*, 524 F.3d at 1087 (quoting *United States v. Kojayan*, 8 F.3d 1315, 1318 (9th Cir. 1993)).

Additionally, the Court finds that this remedy is appropriate to deter future illegal conduct. That consideration is, of course, important in the Court's exercise of its supervisory power. *See Chapman*, 524 F.3d at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991)). The officers involved in this investigation continuously passed on their obligations to disclose information about [REDACTED], even when they had actual knowledge or ready access to this information. The Court will not countenance such a careless attitude toward their obligations to identify evidence favorable to the defendant.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion.

The Court recognizes that the AUSA was placed in an increasingly untenable position, especially as the full extent of the Government's misconduct was slow to

ORDER – 9

develop.  In these circumstances, the Court acknowledges that the AUSA acted promptly when the evidence of [REDACTED]'s reliability and veracity finally came to light.  But ultimately, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *See Kyles*, 514 U.S. at 437.  That did not happen here.

DATED this 24th day of August, 2016.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 10